CAROLINE DJANG (SBN: 216313)
BUCHALTER LLP
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
Telephone: 949.760.1121
Fax: 949.720.0182
Email: cdjang@buchalter.com

Counsel for Defendants and Counterclaimants, CIS International Distributors Inc., Live Aquaria Holdings Corp., Lionsrock Investments LLC, Lionsrock Wisconsin LLC, T3 Aquatics, Siam Tropical Fish Ltd., Tropical Aquarium Fish (FIJI) Ltd, and Charitha I. Samarasinghe

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>CIS INTERNATIONAL HOLDINGS CORPORATION (N.A.) CORPORATION, dba E TROPICAL FISH,<br><br>Debtor<br><br>──────────────────────────<br><br>PANTHERS CAPITAL LLC,<br><br>　　　Plaintiff and Counter-Defendant,<br><br>v.<br><br>CIS INTERNATIONAL DISTRIBUTORS INC., LIVE AQUARIA HOLDINGS CORP., LIONSROCK INVESTMENTS LLC, LIONSROCK WISCONSIN LLC, T3 AQUATICS, SIAM TROPICAL FISH LTD., TROPICAL AQUARIUM FISH (FIJI) LTD., AND CHARITHA I. SAMARASINGHE,<br><br>　　　Defendants and Counterclaimants | CASE NO. 2:25-bk-18374-BR<br><br>Chapter 7<br><br>ADV. PROC. NO. 2:26-ap-01070-BR<br><br>**OPPOSITION OF DEFENDANTS AND COUNTERCLAIMANTS TO MOTION FOR REMAND**<br><br>DATE:　　May 12, 2026<br>TIME:　　10:00 a.m.<br>CRTRM:　　1668 (In Person Hearing) |

The removing parties, CIS International Distributors Inc., Live Aquaria Holdings Corp., Lionsrock Investments LLC, Lionsrock Wisconsin LLC, T3 Aquatics, Siam Tropical Fish Ltd., Tropical Aquarium Fish (Fiji) Ltd., and Charitha I. Samarasinghe (collectively, the "Removing Parties" or the "Guarantors") hereby oppose the Motion for Remand filed by Panthers Capital, LLC ("Panthers").

/ / /

## I.    INTRODUCTION

Panthers seeks remand of this properly removed adversary proceeding based on technical objections, an unduly narrow view of bankruptcy jurisdiction and an attempt to sever this litigation from the very bankruptcy case it directly impacts.  The Court should deny the Motion for several reasons.

First, the Connecticut Superior Court action removed by the Removing Parties on March 21, 2026 (the "Removed Action") concerns the same agreements, transactions, and alleged transfers that underlie Panthers' proof of claim and the Chapter 7 Trustee's ongoing investigation into potential avoidance actions against Panthers.  The outcome of this proceeding will directly affect the allowance or disallowance of claims against the estate, potential recovery of estate assets, and the orderly administration of the bankruptcy case.[1]

Second, this Court has subject-matter jurisdiction under 28 U.S.C. § 1334(b) because the claims and counterclaims in this adversary proceeding arise from the same agreements and transactions that form the basis of Panthers' proof of claim and the Chapter 7 Trustee's investigation into potential estate causes of action, and their resolution will directly affect the administration of the bankruptcy estate.

Third, removal was timely pursuant to this Court's order extending the time to remove actions [Doc. 179], procedurally proper under 28 U.S.C. §§ 1334 and 1452, and squarely within this Court's core and, at minimum, "related to" jurisdiction.  Neither mandatory nor discretionary abstention applies.  Retaining jurisdiction promotes judicial economy, prevents inconsistent rulings, and protects the integrity of the bankruptcy process.

## II.    BRIEF FACTUAL BACKGROUND

Panthers commenced the Removed Action to enforce alleged obligations under a Future Receivables Sale and Purchase Agreement and a Factoring Facility Agreement entered into with the Debtor, CIS International Holdings (N.A.) Corporation (the "Debtor"), and guaranteed by the

---

[1] For clarity, Panthers Capital LLC is the sole counter-defendant in this adversary proceeding. The counterclaims asserted in the underlying Removed Action were brought only by the non-debtor guarantor defendants against Panthers Capital LLC. The Debtor, CIS International Holdings (N.A.) Corporation, is a defendant in the underlying action but is not a counter-defendant, and no counterclaims are asserted against the Debtor.

non-debtor Defendants (the "Guarantors"). Shortly thereafter, the Debtor filed for bankruptcy protection. Panthers filed a proof of claim in this Chapter 7 case based on the same agreements and transactions at issue in the Removed Action.

The Chapter 7 Trustee has sought authority to retain special litigation counsel to investigate and pursue potential claims against Panthers, including avoidance actions under Chapter 5 of the Bankruptcy Code arising from the same agreements and payments challenged in the removed action [Doc. 185].

Pursuant to the Court's January 29, 2026 order extending the deadline to remove actions under Federal Rule of Bankruptcy Procedure 9027 [Doc. 179], the Removing Parties timely removed the Removed Action to this Court.

## III.    ARGUMENT

### A.    Removal Was Procedurally Proper and Timely

Panthers first argues that removal was defective because the Notice of Removal was filed in the "wrong court." That argument misunderstands bankruptcy removal. Under 28 U.S.C. § 1452(a), a party may remove a claim related to a bankruptcy case to the district court with jurisdiction under 28 U.S.C. § 1334. In bankruptcy cases, jurisdiction is exercised by the bankruptcy court in which the main case is pending pursuant to 28 U.S.C. § 157(a). Filing the Notice of Removal in this Court, where the Debtor's bankruptcy case is pending, was therefore proper.

Federal Rule of Bankruptcy Procedure 9027 requires that notice of removal be filed with the bankruptcy court and served on the state court, which was done here. Neither the statute nor the rule requires initial filing in the federal district court for the geographic location of the state court action.

Panthers' timeliness argument similarly fails. This Court expressly extended the deadline to remove the Removed Action to March 21, 2026. The Removing Parties filed the Notice of Removal on March 21, 2026. Any subsequent refiling or administrative correction does not defeat timeliness where, as here, the removing parties acted diligently and in reliance on a court-approved extension. Technical filing issues do not warrant the extreme remedy of remand.

BUCHALTER LLP
IRVINE

BUCHALTER 109671183v4

**B.    This Court Has Subject-Matter Jurisdiction Under 28 U.S.C. § 1334**

A proceeding is "related to" a bankruptcy case if "the outcome could conceivably have any effect on the estate being administered in bankruptcy." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984); adopted by the Ninth Circuit in *In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988). The removed action easily meets this standard. The Removed Action: (i) seeks to enforce the same agreements forming the basis of Panthers' proof of claim; (ii) requires adjudication of whether payments made to Panthers were proper, recoverable, or avoidable; (iii) will materially affect the allowance, disallowance, or amount of claims against the estate; and (iv) overlaps factually and legally with potential avoidance and estate causes of action being investigated by the Chapter 7 Trustee. Courts routinely find "related to" jurisdiction where state law claims bear on claim allowance or avoidance actions. *See e.g. In re Pegasus Gold Corp.*, 394 F.3d 1189, 1194 (9th Cir. 2005).

Here, the Chapter 7 Trustee has sought to retain counsel specifically for this purpose: "In accordance with Trustee's instructions, the Firm will represent Trustee in the prosecution of any and all claims the Estate may have, including claims under the provisions of Chapter 5 of the Bankruptcy Code, arising out of, or relating to, the obligations and transfers made by the Debtor to Panthers." *Chapter 7 Trustee's Application to Employ Richard P. Cook, PLLC as Special Litigation Counsel* [Doc. 185] at 2, ln. 7-10. As such, the Removed Action is core, as it concerns allowance or disallowance of claims against the estate and the administration of the estate. 28 U.S.C. § 157(b)(2)(A), (B), and (O).

**C.    Equitable Remand Is Not Warranted**

Panthers invokes discretionary remand under 28 U.S.C. § 1452(b), but the equities favor retention. Judicial economy strongly supports keeping this matter before the same court overseeing the Chapter 7 case and the Trustee's investigation. Splitting adjudication between this Court and a Connecticut state court would invite inconsistent rulings regarding the nature of the agreements, alleged defaults, and payments, issues central to both claim allowance and potential avoidance actions.

///

While state law issues are implicated, federal courts routinely interpret and apply state law in bankruptcy proceedings, particularly where doing so is necessary to administer the estate. Panthers' assertion that the Guarantors are forum shopping ignores that removal occurred only after the Debtor filed bankruptcy and after the Trustee had sought to retain counsel to investigate Panthers' transactions. Removal here advances, rather than frustrates, bankruptcy policy.

### D.    Mandatory Abstention Does Not Apply

Mandatory abstention under 28 U.S.C. § 1334(c)(2) applies only if all statutory elements are satisfied. They are not. The proceeding arises in and relates to a bankruptcy case, implicates claim allowance and estate administration, and cannot be divorced from federal bankruptcy jurisdiction. Moreover, where the determination of claims against the estate is at issue, mandatory abstention is categorically inapplicable. *See In re Lazar*, 237 F.3d 967, 981 (9th Cir. 2001).

In the Motion, Panthers relies heavily on *Williams v. Shell Oil Co.*, 169 B.R. 684 (S.D. Cal. 1994), however, the *Williams* case actually cuts against abstention here. Panthers' own motion concedes that the outcome of this adversary proceeding "might change the identity of the person holding Panther's proof of claim against the estate" (Motion at 6). That is a direct effect on estate administration, and under *Williams*, that alone defeats mandatory abstention. As explained below, the case is about to become even more intertwined with federal law and the bankruptcy estate.

Panthers repeatedly asserts that the counterclaim is "only state law" (Motion at 3). Removing Parties intend to seek leave to amend to add federal RICO claims under 18 U.S.C. § 1962(c) and (d) based on the conspiracy between Panthers, related entities, and their principals. Once federal claims are added, the Removed Action will no longer be based solely upon state law claims. Thus, mandatory abstention is categorically unavailable.

Panthers argues there is "no federal jurisdiction" (Motion at p. 9). As set forth above, federal question jurisdiction will exist once RICO claims are added. Under *Williams*, this defeats mandatory abstention.

Additionally, Panthers asserts the case can be tried "in nine to twelve months" (Motion at p. 9). That is demonstrably false. Here, the pleadings are not even closed. A motion to dismiss the Guarantors' counterclaims is still pending, with no indication from the presiding judge in

Connecticut as to when the parties may expect a ruling. Should the court dismiss the Guarantors' counterclaims in response to Panthers' motion, the Guarantors should receive leave to re-file their counterclaims, and Panthers is, in turn, permitted to move to dismiss the re-filed counterclaims. If the Connecticut court denies Panthers' motion to dismiss the Guarantors' counterclaims, Connecticut procedure allows Panthers to file two additional pre-answer motions challenging the Guarantors' counterclaims—a request to revise and a motion to strike—each of which would require a ruling from the Connecticut court before Panthers is required to answer the counterclaims. No discovery has occurred other than responses to requests for admission. Speculative timelines do not satisfy the "timely adjudication" requirement. Panthers cannot meet this element.

### E. Discretionary Abstention Is Also Unwarranted

#### 1. Efficient administration of the estate favors retention

Here, the Trustee's proposed special litigation counsel is investigating the same MCA and factoring transactions at issue in the Removed Action. The validity of Panthers' contracts is central to both the Removed Action and the bankruptcy case. The Guarantors intend to argue that California law, not Connecticut law, governs the contracts. In addition, the allegations against Panthers could implicate the rights of other creditors in the bankruptcy case, who may be entitled to bring their own actions against Panthers. For example, Panthers advised one of the Guarantors Sam to cancel a superior UCC-1 filing, and then asserted lien priority. Panthers also fraudulently assigned a UCC-1 that it acknowledged had been repaid in full from one of Panthers' sister companies to Panthers in an attempt to gain priority over other secured creditors. This Court is the only forum where all of these issues can be resolved consistently.

#### 2. State law issues do not predominate

Panthers argues that Connecticut has a "new statutory scheme" regulating MCAs (Motion at p. 6). That is misleading. The MCA industry is flocking to Connecticut because Connecticut imposes no usury cap on corporate borrowers, not because of the new statute. One of the Guarantors' nine affirmative defenses to Panthers' claims is the argument that, upon information and belief, Panthers failed to comply with these new Connecticut statutes. Whether Panthers complied with that statute has nothing to do with the core issue: whether the contracts are valid and

enforceable.  Removing Parties have an affirmative defense based on noncompliance with the statute, however, it is not central to the case, and it is not necessary to adjudicate the counterclaims.

### 3.    The Removed Action is in its infancy

Panthers claims the case is "advanced" (Motion at p. 8). The record shows otherwise.  No discovery has occurred, except for requests for admission.  No trial date is set.  The pleadings are not closed, as Panthers' motion to dismiss the counterclaims is pending.  The Guarantors should be permitted to amend and re-file their counterclaims in the event they are dismissed, which Panthers may move to dismiss a second time.  If the court denies Panthers' motion to dismiss, Panthers may file additional pre-answer motions to challenge the sufficiency of the counterclaims before Panthers is obligated to interpose an answer to the counterclaims.

### 4.    There is no forum shopping

Panthers accuses the Guarantors of forum shopping (Motion at p. 7).  But the facts show that Panthers voluntarily appeared in this bankruptcy case and filed a proof of claim.  Removal to the bankruptcy court is the statutory mechanism that Congress intended.

### 5.    Jury trial rights are a non-issue

Panthers argues jury trial rights favor abstention (Motion at p. 7).  That is incorrect, as the contract contains a jury trial waiver.

### 6.    The presence of non-debtor parties does not compel abstention

Panthers claims "the parties to this action are exclusively non-debtors" (Motion at p. 7). The Debtor is a named defendant.  The counterclaims arise from the same transactions the Trustee is investigating.  The validity of the contracts affects the estate's liabilities.

### 7.    Comity does not favor abstention

Panthers argues Connecticut courts should interpret the new MCA statute (Motion at p. 7). However, the statute is irrelevant to the core issues of whether the contracts are valid and enforceable, and bankruptcy courts routinely interpret state statutes and are more than qualified to do so.  In addition, as federal RICO claims will soon be added, comity is not implicated.

### 8.    Prejudice favors remaining in bankruptcy court

Panthers litigates nationwide and voluntarily appeared in this bankruptcy case.  Panthers'

"burden" argument is contradicted by its own litigation history. Panthers is currently involved in active litigation in the Superior Court of the State of California for the County of Orange in the matter of *Stars Bay Area, Inc. et al. v. Panthers Capital, LLC*, Index No. 30-2025-01452374-CU-BT-NJC. A PACER search for "Panthers Capital" demonstrates that, as of April 28, 2026, Panthers has, since 2021, appeared in twenty-four federal cases (including the underlying bankruptcy matter) throughout the United States, most of which are outside Connecticut. The Guarantors, on the other hand, would face duplicative litigation and inconsistent rulings if remand is granted.

## IV.    CONCLUSION

For the foregoing reasons, the Removing Parties respectfully request that the Court deny the Motion for Remand in its entirety.

DATED: April 20, 2026            BUCHALTER LLP


By:    */s/Caroline Djang*
                Caroline Djang
      Attorneys for Defendants and Counterclaimants
      CIS International Distributors Inc., Live Aquaria
      Holdings Corp., Lionsrock Investments LLC,
      Lionsrock Wisconsin LLC, T3 Aquatics, Siam
      Tropical Fish Ltd., Tropical Aquarium Fish
      (FIJI) Ltd, and Charitha I. Samarasinghe

## DECLARATION OF PETER A. LUCCARELLI

I, Peter A. Luccarelli, declare:

1.      I am over the age of eighteen years and understand and believe in the obligations of an oath or affirmation.

2.      I am attorney admitted to practice law in the State of Connecticut, as well as other jurisdictions.

3.      I am a partner at the law firm of Sisco-Law, a professional corporation with a place of business in Florida.

4.      Sisco-Law is a business. Each fact in this Declaration is based upon my personal knowledge derived from the business records that Sisco-Law maintains. Sisco-Law's business records are created in its ordinary course of business and affairs and consists of memoranda, reports, and data compilations of acts, events, and transactions. It is the regular practice of Sisco-Law to make these memoranda, reports, and data compilations of acts, events, and transactions at the time of the occurrence or within a reasonable time thereafter.

5.      Sisco-Law represents CIS International Distributors Inc., Live Aquaria Holdings Corp., Lionsrock Investments LLC, Lionsrock Wisconsin LLC, T3 Aquatics, Siam Tropical Fish Ltd., Tropical Aquarium Fish (Fiji) Ltd., and Charitha I. Samarasinghe ("Mr. Samarasinghe") (collectively, the "Removing Parties" or the "Guarantors") as their counsel, in a collections case in the Connecticut Superior Court, Judicial District of Stamford/Norwalk at Stamford, docketed as *Panthers Capital LLC v. CIS International Holdings (N.A.) Corp. d/b/a E Tropical Fish, et al.*, FST-CV25-6075223-S (the "Collection Action"). Sisco-Law previously represented the Debtor, CIS International Holdings (N.A.) Corporation (the "Debtor") in the Collection Action, until the Debtor filed for bankruptcy protection.

6.      On December 11, 2025, the Guarantors filed an answer and defenses to Panthers' complaint in the Collection Action, as well as counterclaims against Panthers. The counterclaim alleged, among other things, that the Guarantors were victims of a scheme by Panthers, its principals, and related entities to defraud the Guarantors of personal assets that Panthers required they pledge to personally guarantee repayment on a number of MCAs issued by Panthers to the

**OPPOSITION TO MOTION FOR REMAND**

BUCHALTER 109671183v4

Debtor. Specifically, the Guarantors allege that, by June 2025 the conspirators had control of the majority of the Debtor's business income pursuant to various agreements between Panthers and the Debtor, that the conspirators became concerned that the Debtor would be unable to meet its payment obligations to Panthers, and that the conspirators then engineered a situation whereby they prevented the Debtor from meeting its repayment obligations so that Panthers could claim the Debtor breached its agreements with Panthers. And, because Panthers required the Guarantors to personally guarantee the Debtor's repayment obligations, this allowed Panthers to pursue the Guarantors directly for assets that Panthers should not have been entitled to pursue.

7.    On December 31, 2025—while the Guarantors' time to seek removal under Federal Rule of Bankruptcy Procedure 9027 remained open—Panthers moved to dismiss the Guarantors' counterclaims. Panthers' motion to dismiss argued, in essence, that the Guarantors lacked standing to counterclaim against Panthers because they had not, and could not, allege a separate and independent injury, even if everything the Guarantors alleged in the counterclaim was true. Shortly before oral argument, Panthers filed a notice of supplemental authority alerting the court to a recent decision from the Appellate Court of Connecticut, *Ligeri v. White Rd. Cap., LLC at al.*, 237 Conn. App. 867, 874 (2026), which addressed, among other things, grounds by which a contract guarantor may have standing to assert claims against a party to the contract. The parties argued the motion on March 16, 2026. The judge did not issue a ruling at that time, and advised only that the motion would be taken under advisement, with no time given as to when the court would issue its ruling.

8.    The Guarantors intend to seek leave to amend their counterclaims to allege that Panthers and other co-conspirators committed violations of RICO, 18 U.S.C. § 1962(c) and (d). The Guarantors intend to do so if the case remains with this Court or is remanded to Connecticut.

9.    Panthers' reference to distinctions between MCA transactions and traditional loans is, in this case, irrelevant, because Connecticut does not limit the interest rates charged on commercial loans in excess of $250,000. Conn. Gen. Stat. § 37-9(4)(B). The Guarantors dispute that the agreements between Panthers and the Debtor were MCA products, and believe they are in fact disguised loans. However, both the MCA and factoring transaction documents that Panthers annexed to its complaint in the Collections Actions state on their face that they involve financial

transactions in excess of $1 million, meaning no statutory interest cap would apply in Connecticut. If Connecticut law applies to the relevant contracts, there is no statutory limit on effective interest rates regardless of whether the court considers the contracts to be loans or MCA transactions.

10. The Guarantors also respectfully disagree with Panthers representation that it is "unclear how the holding of *Ligeri* would be applied to the Guarantors' counterclaims." In *Ligeri*, the appellate court reversed the trial court's dismissal of the guarantors' claims on standing grounds, and held that the guarantor had alleged sufficient acts against the guarantor's personal finances to give the guarantor standing to assert a direct injury. *Ligeri*, 237 Conn. App. at 879-80. Here, the Guarantors allege that they are victims of a scheme by Panthers and other conspirators to pursue the Guarantors' personal assets by attempting to manufacture a breach of the agreements between Panthers and the Debtor. As the Guarantors argued to the Connecticut court on March 16, the *Ligeri* decision is squarely on point here in the Guarantors' favor.

11. Furthermore, while one of the Guarantors' nine affirmative defenses to Panthers' claims in the Collection Action asserts, upon information and belief that the agreements between Panthers and the Debtor may violate certain Connecticut statutes regulating MCA transactions, Conn. Gen. Stat. § 361-381 *et seq.*, this single affirmative defense should not dictate that this case be remanded to Connecticut, and the Guarantors are prepared to waive it if the Court believes that remand may be required because of this affirmative defense.

12. Finally, the undersigned disputes Panthers' belief that the Collection Action can be tried in Connecticut within the next eight months if the case is remanded. First, if the case is remanded Panthers has no control over when the presiding judge will issue a decision on Panthers' motion to dismiss. Second, and as noted above, the Guarantors intend to seek leave to amend their counterclaim to include additional federal claims under RICO, which Panthers will likely oppose. Third, if the Connecticut court agrees to dismiss any portion of the Guarantors' counterclaims, it will likely be done without prejudice and with leave to refile, and the Guarantors anticipate that Panthers will move to dismiss any amended counterclaims. And, fourth, Panthers is permitted pursuant to the Connecticut Practice Book to make two additional pre-answer filings in response to the counterclaim—a request to revise the counterclaim pursuant to Conn. Practice Book §§ 10-35–

10-38 and a motion to strike the counterclaim pursuant to Conn. Practice Book §§ 10-39–10-45—before Panthers must answer the counterclaim. Given that pleadings remain open despite the fact that Panthers filed the complaint in the Collection Action approximately eight months ago, they are unlikely to close shortly after remand if the Court so orders. The Guarantors further note that there has been no discovery conducted in the Collection Action other than responding to certain Requests for Admissions submitted by Panthers. The Collection Action is in its infancy. The Guarantors will require fact discovery and potentially expert discovery to defend themselves against Panthers' claims and to support their counterclaims. That cannot happen on the trial timeline that Panthers suggests is possible in Connecticut.

13.    There would be prejudice to the Guarantors if this case is remanded to Connecticut. Panthers voluntarily appeared in the bankruptcy action before the Guarantors sought to remove the Collection Action there, and have made a claim against the Debtor's estate based on the agreements at issue in the Collection Action. The Guarantors have been forced to retain counsel in two separate jurisdictions to represent their interests in the Collection Action, resulting in prejudice to them. They will need to maintain counsel in the bankruptcy action, and would benefit from consolidating the Collection Action with the bankruptcy action given the substantial overlap of issues.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 28th day of April, 2026, at Tampa, Florida.



Signed by:

Peter Luccarelli
87DF68D841CF42B...
Peter A. Luccarelli

BUCHALTER LLP
IRVINE

12

**OPPOSITION TO MOTION FOR REMAND**

BUCHALTER 109671183v4

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
18400 Von Karman Ave., Suite 800, Irvine, CA 92612

A true and correct copy of the foregoing document entitled (*specify*): OPPOSITION OF DEFENDANTS AND COUNTERCLAIMANTS TO MOTION FOR REMAND
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 4/28/2026 , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 4/28/2026 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 4/28/2026 , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 4/28/2026 | LAURIE VERSTEGEN | /s/Laurie Verstegen |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*  **F 9013-3.1.PROOF.SERVICE**

1.    **<u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**:
▪Caroline Djang on behalf of Plaintiffs
cdjang@buchalter.com, docket@buchalter.com;lverstegen@buchalter.com
▪David M Goodrich (TR)
dgoodrich@go2.law, c143@ecfcbis.com;dgoodrich11@ecf.axosfs.com;lrobles@go2.law
▪Kurt Ramlo on behalf of Plaintiff Panthers Capital LLC
RamloLegal@gmail.com, kr@ecf.courtdrive.com,ramlo@recap.email
▪United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

2.    **<u>SERVED BY UNITED STATES MAIL</u>**:
Honorable Barry Russell
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1660
Los Angeles, CA 90012

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                            **F 9013-3.1.PROOF.SERVICE**