RAMLO LAW
Kurt Ramlo (SBN 166856)
15021 Ventura Blvd. #544
Los Angeles, CA 91403
RamloLegal@gmail.com
Telephone: (310) 880-9208

Attorney for Plaintiff and Counter-Defendant Panthers Capital, LLC\*

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>CIS INTERNATIONAL HOLDINGS (N.A.) CORPORATION, dba E TROPICAL FISH,<br><br>Debtor. | Case No. 2:25-18374-BR<br><br>Hon. Barry Russell<br><br>Chapter 7 |
| CIS INTERNATIONAL DISTRIBUTORS INC., et al.,\*<br><br>Plaintiff,<br><br>vs.<br><br>CIS INTERNATIONAL HOLDINGS (N.A.)_ CORPORATION,\*<br><br>Defendants.<br><br>And related counterclaim. | Adv. No. 26-01070-BR<br><br>**Reply to Guarantor Defendants' and Counterclaimants' Opposition to Motion for Remand and to Non-Party Trustee's Response**<br><br>Hearing Date: **May 12, 2026**<br>Hearing Time: **10:00 a.m.**<br>Courtroom:1668 (IN PERSON HEARING) |

Plaintiff and Counter-Defendant Panthers Capital LLC\* ("**Panthers**") replies to the

*Opposition of Defendants and Counterclaimants to Motion for Remand* (DE 14, filed April 28,

2026, the "**Opposition**") by CIS International Distributors Inc., Live Aquaria Holdings Corp.,

---

\* Panthers Capital LLC is the plaintiff and counter-defendant in the action removed from Superior Court of Connecticut, Stamford Division. CIS International Distributors Inc., Live Aquaria Holdings Corp., Lionsrock Investments LLC, Lionsrock Wisconsin LLC, T3 Aquatics, Siam Tropical Fish Ltd., Tropical Aquarium Fish (Fiji) Ltd., and Charitha I. Samarasinghe are not plaintiffs. They are among the defendants and are the entirety of the counterclaimants and removing parties. The Debtor is also a defendant.

Lionsrock Investments LLC, Lionsrock Wisconsin LLC, T3 Aquatics, Siam Tropical Fish Ltd., Tropical Aquarium Fish (Fiji) Ltd., and Charitha I. Samarasinghe (the "**Guarantor Defendants**"), as follows:

### A.      The Notice of Removal was filed in the wrong court.

Panthers commenced an action (the "**Connecticut Action**") in the Connecticut Superior Court, Stamford/Norwalk Division (the "**Connecticut Court**").  The Connecticut Court is geographically located in the District of Connecticut for both the United States Bankruptcy Court and the United States District Court.  28 U.S.C. § 86 ("Connecticut constitutes one judicial district"); 28 U.S.C. § 151 ("In each judicial district, the bankruptcy judges in regular active service shall constitute a unit of the district court to be known as the bankruptcy court for that district").  Thus, the Connecticut Action is pending in the District of Connecticut.

28 U.S.C. § 1452(a) states that a "party may remove any claim or cause of action in a civil action . . . to **the district court for the district where such civil action is pending** . . . ." (Emphasis added.)  Rule 2027 mandates that a "notice of removal must be filed with the clerk for **the district and division where the state . . . civil action is pending**."  (Emphasis added.)  Neither the statute nor the rule allow for removal to any district other than the district where the civil action to be removed is pending.  In this case, that district is the District of Connecticut.  The Guarantor Defendants removed the Connecticut Action to the Central District of California.  The Connecticut Action was not pending in the Central District of California.

The Opposition argues that "[u]nder 28 U.S.C. § 1452(a), a party may remove a claim related to a bankruptcy case to the district court with jurisdiction under 28 U.S.C. § 1334.  In bankruptcy cases, jurisdiction is exercised by the bankruptcy court in which the main case is pending pursuant to 28 U.S.C. § 157(a)."  (Opp'n at 3:14-17.)  First, this argument or summary of the statutes omits material language in the statute and the rule, respectively, that removal is made to "the district court for the district where such civil action is pending" and the notice of removal is "filed with the clerk for **the district and division where the state . . . civil action is pending**."  The Opposition does not discuss or address the omitted language, which required any removal to be to the District of Connecticut in this instance.

Second, the suggestion that 28 U.S.C. § 157(a) allows referral of removed civil actions only to the home bankruptcy court because 28 U.S.C. § 1334(b) vests "related to" jurisdiction only in the district court where the bankruptcy court is located is contrary to those statutes. Section 1334(b) provides that "**[e]ach district court** may provide that . . . any or all proceedings . . . related to a case under title 11 shall be referred to the bankruptcy judges for the district." (Emphasis added.)  Each of the district courts in the 94 districts in the United States (i.e., all of them) have bankruptcy jurisdiction as provided in 28 U.S.C. § 1334(a)-(b) and each of them can refer "related to" proceedings to their bankruptcy court, subject to the exclusive jurisdiction of the home bankruptcy court under § 1334(e) over (1) property of the debtor and property of the estate and (2) employment of professional persons by a trustee or debtor in possession governed by 11 U.S.C. § 327.

Consistent with this national, statutory jurisdictional scheme, 28 U.S.C. § 1409 provides venue rules for which district within the United States can hear certain categories of "related to" proceedings.  Generally, "related to" proceedings can be commenced in the home bankruptcy court.  28 U.S.C. § 1409(a).  A trustee, however, must commence certain consumer claims in the district where the defendant resides.  28 U.S.C. § 1409(b).  A trustee may prosecute a claim of the debtor or creditors under 11 U.S.C. § 544(b) in any federal or state court venue where the debtor or creditors could have prosecuted the action if a bankruptcy case were not pending.  28 U.S.C. § 1409(c).  A trustee can sue and be sued on claims arising out of the postpetition operation of a business in a federal or state court available under nonbankruptcy venue provisions.  28 U.S.C. § 1409(d)-(e).  Congress did not enact these venue provisions for district courts outside the district of the home bankruptcy court just so those court could dismiss those actions for lack of bankruptcy jurisdiction.

The United States Bankruptcy Court for the District of Connecticut thus would have had bankruptcy jurisdiction over any proceeding "related to" the parent chapter 7 case of the Debtor, CIS International Holdings (N.A.) Corporation.   As explained below and in the moving papers, the Connecticut Action is not within the "related to" jurisdiction of § 1334(b).  Yet even if "related to" jurisdiction were to be found, the Guarantor Defendants did not remove the Connecticut Action

to the United States Bankruptcy Court for the District of Connecticut and therefore the attempted removal was ineffective.  The Connecticut Action should be remanded.

**B.      The Notice of Removal was untimely.**

Rule 9027(a)(2)(A) requires that all notices of removal be filed within 90 days after the order of relief (i.e., the petition date in a chapter 11 or chapter 7 case).  Given that the parent case was commenced on September 22, 2025,  the initial deadline to file a notice of removal was December 21, 2025.   The Trustee moved before that deadline for an extension of the time to remove.  On January 29, 2026, the Court entered an order (DE 179) extending the time for the Trustee and the Guarantor Defendants "**to remove the action** filed by Panthers" (i.e., the Connecticut Action) to March 21, 2026.  (Emphasis added.)

The Guarantor Defendants were aware of this precise language.  The Trustee filed a notice of lodgment with his proposed order (DE 175) at 1:16 pm on January 20, 2026.  But about 2-1/2 hours later at 3:05 pm, he filed a second lodgment notice (DE 176) with a new proposed order revised to include a reference to the Guarantor Defendants' joinder in the Trustee's motion and to add them as express beneficiaries of the March 21, 2026 deadline "to remove the action" filed by Panthers.

The Guarantor Defendants, however, did not remove the Connecticut Action by March 21, 2026.  They filed a notice of removal dated March 20, 2026 in the main case (DE 193) on March 20,. 2026, but that notice of removal was never served or filed in the Connecticut Court and thus no removal ever became effective with respect to that notice of removal.  *See* Fed. R. Bankr. P. 9027(b)(2), (c).

The Guarantor Defendants then filed on March 23, 2026, after the removal deadline, a notice of removal dated March 23, 2026 to initiate this action (DE 1).  They served and filed that notice of removal with the Connecticut Court on March 26, 2026.  (Mot. Ex. A at 22.)  Although that service and filing purportedly brought the Connecticut Action to this Court as of March 26, 2026, the purported removal occurred after the March 21, 2026 deadline and the action should be remanded as untimely.

The Guarantor Defendants argue that "[t]echnical filing issues do not warrant the extreme

remedy of remand." It is the Guarantor Defendants who are effectively seeking a remedy for their untimely removal through an order denying the Motion. But they provide no authority for any such remedy. The action should be remanded.

**C.**     **The Court lacks subject matter jurisdiction over the claims by and against the Guarantor Defendants.**

The Opposition argues that the Connecticut Action (1) seeks to enforce the same agreements, (2) requires adjudication of whether payments made to Panthers were proper, (3) will materially affect the allowance and disallowance of claims against this estate, and (4) overlap factually and legally with potential avoidance and state causes of action under investigation by the Trustee. (Opp'n at 4:5-10.)

(1)     The agreements at issue are independent obligations and are independently enforceable. Panther's proof of claim seeks to enforce the merchant cash agreement and the factoring agreement against the Debtor's estate, but it seeks to enforce the guarantees against the Guarantor Defendants.

(2)     The Guarantor Defendants make no showing that any judgment by the Connecticut Court on whether payments were proper (assuming that court finds that the guarantors have standing to litigation that position) would have an adverse effect on this estate.

(3)     Similarly, the Guarantor Defendants make no showing that any judgment by the Connecticut Court would adversely affect the estate with respect to the allowance or disallowance of Panther's proof of claim. It is unclear whether the Guarantors Defendants and the Trustee contend that such a ruling would somehow be collateral estoppel in Panthers' favor on its proof of claim. Does the Trustee contend that he would be bound by the Guarantor Defendants litigation decision-making in the Connecticut Court?

(4)     Finally, the potential for potential common issues of fact or law does not establish "related to" jurisdiction. Again, does the Trustee contend that he would be bound by the Connecticut Court's adjudication of these potential common factual and

legal issues?

None of these potentialities demonstrate any adverse effect on the estate.  This is primarily because guarantees given by the Guarantor Defendants created three separate relationships.

The first relationship is the primarily obligor(debtor)-obligee relationship between the Debtor and Panthers.

The second is the primarily obligor(debtor)-secondary obligor relationship between the Debtor and the Guarantor Defendants.  If the Guarantor Defendants pay off the guarantees, they are entitled to reimbursement from the Debtor.

The third is the secondary(yet independent)-obligor and secondary-obligee relationship between the Guarantor Defendants and Panthers.  If the Guarantor Defendants pay off their guarantee obligations in full, they have the right to be subrogated to the rights of Panthers against the Debtor.

These relationships are independent relationships.  This independence gives Panthers the right to sue the Guarantor Defendants without the participation of the Debor.  Panthers could have sued only the Guarantor Defendants had it been so inclined.

These separate relationships explain why Panther's action against the Guarantors is not within the "related to " jurisdiction of this Court.  Regardless of the outcome of the Connecticut Action vis-à-vis the Guarantor Defendants, it will not have any effect on the bankruptcy estate or the claims-allowance and distribution process.

When Panthers succeeds in obtaining judgment against the Guarantor Defendants on the guarantees and their counterclaims, Panthers will still have the same proof of claim against this estate.  If the Guarantor Defendants paid Panthers in accordance with that judgment, the Guarantors could elect to be subrogated to the proof of claim and become its owners.  A potential or possible change in the ownership of that claim does not adversely affect the estate or the claims allowance process and therefore does not create "related to" jurisdiction in this Court over the claims between Panthes and the Guarantor Defendants.  If Panthers were to not succeed on its claims or the Guarantor Defendants' counterclaims, that would obviously have no negative impact on this bankruptcy estate.

The Trustee's investigation of potential avoidance claims, or of prosecuting other claims of the Debtor against Panthers does not provide any different basis for subject matter jurisdiction over the claims between Panthers and the Guarantee Defendants.

The bottom line is that no one contends that the outcome of the Connecticut Action would be binding on the Trustee.  The mere possibility of conflicting rulings between the Connecticut Court and this Court is no different than any of the innumerable actions by plaintiffs against a primary obligor and separately against a secondary obligor.  Conflicting rulings does not create subject matter jurisdiction.  That is not the test.  The test is whether those potential conflicting rulings would have any effect on this bankruptcy estate.  No one has made that showing.

The proof of claim if objected to obviously is a core proceeding.  But that is not affected by the Connecticut Acton.  Panthers seeks initially a remand of just the claims by and against the Guarantor Defendants, leaving Panther's claims against the Debtor pending in this Court.  Alternatively, if the entire Connecticut Action were remand, the automatic stay would prevent the Debtor from proceeding on its claim against the Debtor and only this Court could alter that automatic stay.  The fact that any objection to Panther's proof of claim or avoidance actions against Panthers might take place still creates no subject matter jurisdiction of Panther's claims against the Guarantor Defendants and their counterclaim against Panthers.

The Connecticut Action should be remanded based on lack of subject matter jurisdiction.

**D.      There are numerous equitable grounds for remand.**

***(1)  the effect or lack thereof on the efficient administration of the estate if the Court recommends [remand or] abstention;***

The Guarantor Defendants argue that the validity of the Panther's non-guarantee contracts are common to the Connecticut Action and this case.  But the purposed reasons why adjudication of Panthers' claims against the Guarantor Defendants would promote a more efficient administration of the estate fall far short of convincing.  Panthers' claims against the Guarantor are based on the guarantees.  A ruling that the underlying guaranteed agreements are defective in some way does not automatically absolve the Guarantor Defendants of the absolute and unconditional guarantees.  For example, a ruling that the underlying agreements are unenforceable yet still

"agreements" means that the Guarantor Defendants may still be on the hook under the guarantees. But as noted above, there is no showing that any adjudication of the Connecticut Action will adversely affect the estate.

The Guarantor Defendants next argue that the Guarantor Defendants' intention to argue that California law and not Connecticut law governs the contracts.  How does this affect the estate? That the allegations against Panthers about improper receipt of payments, cancelled UCC-1 filings by a Guarantor Defendant, and an improperly assigned UCC-1, all of which could implicate the right of other creditors against Panthers.  How this does affect the estate?

There is not showing that retaining the Connecticut Action would promote a more efficient administration of the estate.

**(2)  *extent to which state law issues predominate over bankruptcy issues;***

The Guarantor Defendants do not dispute that there are no bankruptcy issues in the Connecticut Action.  On the contrary, they just list various state-law issues that they would like to have adjudicated in this Court.  That is not relevant to this factor.

**(3)  *difficult or unsettled nature of applicable law;***

The Guarantor Defendants argue that their affirmative defense that Panthers did not comply with a Connecticut statute "has nothing to do with the core issue:  whether the contracts are valid and enforceable."  They did not withdraw the affirmative defense.  The moving papers on this point remain valid.

**(4)  *presence of related proceeding commenced in state court or other
nonbankruptcy proceeding;***

The Guarantor Defendants do not dispute Panthers' position on this factor, that there are none.

**(5)  *jurisdictional basis, if any, other than § 1334;***

The Guarantor Defendants do not dispute Panthers' position on this factor, that there is none.

**(6)  *degree of relatedness or remoteness of proceeding to main bankruptcy case;***

The Guarantor Defendants do not dispute Panthers' position on this factor, that there are no

other proceedings pending in the main case.

### (7)  the substance rather than the form of an asserted core proceeding;

The Guarantor Defendants do not dispute Panthers' position on this factor, that the Connecticut Action is not a core proceeding.

### (8)  the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

The Guarantor Defendants do not dispute Panthers' position on this factor, that the Connecticut Action is not a core proceeding.  Further, if the Trustee objects to Panthers' proof of claim, that does not change the non-core nature of the Connecticut Action to the extent of Panthers' claims against the Debtor.

### (9)  the burden on the bankruptcy court's docket;

The Guarantor Defendants do not dispute Panthers' position on this factor, that state-law issues (including the Connecticut statute) favor sending this matter to the state court.

### (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

Although the Guaranteed Defendants contend that they engaged in no forum shopping, they do not dispute that they agreed by contract to litigate in Connecticut.  The excuse they give for using bankruptcy removal to avoid that obligation---that Panthers voluntarily filed a proof of claim against the Debtor---is absolutely irrelevant to whether the Guaranteed Defendants are forum shopping.  Panthers' filing of a proof of claim is no basis for breaching their contractual promise to litigate in Connecticut.

### (11) the existence of a right to a jury trial;

The Opposition argues that the Motion argues that jury trial rights favor abstention. Panthers merely noted that no party requested a jury trial and the time to do so has lapsed.  The Motion expressed no opinion on whether that state of affairs favors remand and this reply will likewise not take a position on that issue.

### (12) the presence in the proceeding of nondebtor parties;

The Guaranteed Defendants argue that notwithstanding the automatic stay against

prosecuting claims against the Debtor while the Connecticut Action is in the Connecticut Court, the presence of a stayed claim against the Debtor constitutes the presence of a non-debtor party. Panthers does not dispute that the Debtor who is protected by the automatic stay is in that sense not a non-debtor party. This factor still favors remand.

### (13) comity; and

The Opposition argues that the expressed intention that they will seek permission to amend their counterclaim to assert RICO claims turns this factor against Panthers. The position expressed in the Motion remains valid and the potential additional of federal, non-bankruptcy claims does not alter the analysis.

### (14) the possibility of prejudice to other parties in the action.

The Guarantor Defendants for the first time alleged that if this action is remanded, they will face duplicative litigation and inconsistent rulings. They have never identified any other litigation. Nor presented any evidence of it. They demonstrate no prejudice.

### Efficient Judicial Economy

The Opposition in a separate section (Opp'n at 4:21-5:5) argues that judicial economy weights against remand, against relying on inconsistent rulings but without any argument or evidence that the inconsistent rulings would affect this estate, this Court, or judicial economy. This factor presumably looks at the judicial economy of this Court, and keeping the action here would increase the Court's burden, just to adjudicate rights between creditors of the estate. That is not what a bankruptcy court is for.

**E.     Mandatory abstention requires remand.**

The Guarantor Defendants first contend that the Connecticut Action arises in a title 11 case. That is clearly not the case. It then says that process of whether to allow Panther's claim cannot be divorced from bankruptcy jurisdiction. But the claim is a separate process from the Connecticut Action and the filing of a proof of claim does turn a non -core proceeding lacking even "related to" jurisdiction into a core proceeding. The intention to seek to add a RICO claim does not change the fact that Panthers' could not have commenced this action in federal court without bankruptcy jurisdiction. The Guarantor Defendants' stated intention to avail themselves

of every procedural angle to extend the case beyond nine to twelve months does not defeat Panthers' evidence that action can be timely adjudicated.  Mandatory abstention requires remand.

**Conclusion**

Panthers respectfully requests that the Court grant this Motion, remand the Non-Debtor Claims, or alternatively, the entirety of this action to the Connecticut court.

Dated:  May 5, 2026

RAMLO LAW

By: _/s/ Kurt Ramlo_

Attorney for Plaintiff and Counter-Defendant Panthers Capital LLC*

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is 15021 Ventura Blvd. #544, Sherman Oaks, CA  90034.

A true and correct copy of the foregoing document entitled

## Reply to Guarantor Defendants' and Counterclaimants' Opposition to Motion for Remand and to Non-Party Trustee's Response

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.  On **May 5, 2026**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Steve Burnell  Steve.Burnell@gmlaw.com,  sburnell@ecf.courtdrive.com; sburnell@ecf.inforuptcy.com; patricia.dillamar@gmlaw.com; CourtMail@gmlaw.com**
- **Caroline Djang    cdjang@buchalter.com, docket@buchalter.com;lverstegen@buchalter.com**
- **David M Goodrich (TR)    dgoodrich@go2.law, c143@ecfcbis.com;dgoodrich11@ecf.axosfs.com;lrobles@go2.law**
- **United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov**

**2.  SERVED BY UNITED STATES MAIL**: On **May 5, 2026**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows.  Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

None.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **May 5, 2026**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

None.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| May 5, 2026 | Kurt Ramlo | /s/ Kurt Ramlo |
| --- | --- | --- |
| *Date* | *Type Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                              **F 9013-3.1.PROOF.SERVICE**